IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: April 1, 2014

Docket No. 32,650

STATE OF NEW MEXICO,

       Plaintiff-Appellee,

v.

RAUL TARIN,

       Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY
Steven L. Bell, District Judge

Gary K. King, Attorney General
Pranava Upadrashta, Assistant Attorney General
Santa Fe, NM

for Appellee

Raul Tarin
Dexter, NM

Pro Se Appellant

## OPINION

**GARCIA, Judge.**

**{1}** Defendant Raul Tarin appeals his conviction for speeding after a trial de novo in the district court. He argues that the State failed to present sufficient evidence that the speed limit in question was under seventy-five miles per hour pursuant to NMSA 1978, Section 66-7-301 (2002) because the State failed to produce an engineering survey and traffic investigation set forth in NMSA 1978, Section 66-7-303(A) (1996). Defendant also challenges the admission of the State's evidence on lack of personal knowledge and hearsay grounds. We disagree and affirm Defendant's conviction for speeding.

**BACKGROUND**

**{2}** Defendant was stopped by a state police officer and issued a traffic citation for speeding while traveling at a speed of seventy-one miles per hour in a posted forty-five miles per hour speed limit zone. Defendant was originally convicted of speeding in the magistrate court and again after a de novo appeal to the district court. Defendant appeals his speeding conviction, challenging the sufficiency of the evidence against him based upon his construction of the applicable speeding statutes. Defendant asserts that the State was required to produce an engineering survey and traffic investigation to prove that the legally enforceable speed limit was below seventy-five miles per hour at the location in question.

**DISCUSSION**

**{3}** We interpret Defendant's arguments to be a request that this Court review and interpret our speed limit statutes as well as a challenge to the sufficiency of the evidence. Defendant also challenges the admission of the officer's testimony on personal knowledge and hearsay grounds. We begin with the analysis of our speed limit statutes.

**A.      Establishing the Enforceable Speed Limit**

**{4}** Section 66-7-301(A) prohibits an individual from speeding by setting maximum speed limits for various kinds of roads within the State. All roads within the jurisdiction of the State, that are not within a school zone, a business district, a residential district, or a construction zone, statutorily default to a maximum speed limit of seventy-five miles per hour. Any deviation from the default speed limit must be determined on the basis of "an engineering survey and traffic investigation, a detailed report of which is filed with the traffic safety bureau of the state highway and transportation department[.]" Section 66-7-303(A); *see also* § 66-7-301(C) (permitting alteration of the speed limit in accordance with the provisions of Section 66-7-303(A)).

**{5}** Defendant was cited for exceeding the posted speed limit that had been altered and reduced to forty-five miles per hour pursuant to the authority granted in Section 66-7-301(C). Because the posted speed limit had been altered from the statutory maximum, Defendant contends that it was insufficient to simply prove that he had driven in excess of the posted forty-five miles per hour speed limit. Instead, he contends that the State was further required to produce the engineering survey and traffic investigation to prove that the speed limit alteration in question was appropriate. Accordingly, Defendant contends that the State failed to present sufficient evidence to establish the legally altered speed limit under Section 66-7-301(C) and, therefore, he was not violating the maximum speed limit under Section 66-7-301(A). Defendant's arguments presuppose that (1) the methods for establishing the posted speed limit are a required element to establish a charge of speeding, and (2) it is the State's burden to prove the validity of the methods for establishing the posted speed limit. Defendant's arguments regarding the statutory interpretation of Section 66-7-301 appear to be matters of first impression before this Court.

2

**{6}** We first address Defendant's overarching argument that the State is required to produce an engineering survey and traffic investigation to prove the legality of a posted speed limit that is not specifically identified in Section 66-7-301(A). We review questions of statutory interpretation de novo and begin by looking at the plain language of the statute. *State v. Tafoya*, 2012-NMSC-030, ¶ 11, 285 P.3d 604; *see also State v. Tafoya*, 2010-NMSC-019, ¶ 10, 148 N.M. 391, 237 P.3d 693 (explaining that when interpreting a statute, the appellate court seeks to determine the Legislature's intent by "apply[ing] the plain meaning of the statute unless the language is doubtful, ambiguous, or an adherence to the literal use of the words would lead to injustice, absurdity[,] or contradiction, in which case the statute is to be construed according to its obvious spirit or reason" (internal quotation marks and citation omitted)). Defendant's argument on appeal is simple: that actual evidence of the engineering survey and traffic investigation is an essential element to establish the violation of any speed limit that is posted below seventy-five miles per hour unless the roadway falls within a school zone, a business district, a residential district, or a construction zone. *See* § 66-7-301(A), (B).

**{7}** The plain language of Section 66-7-303(A) only requires the posting of a sign giving drivers notice of an altered speed limit and states: "[the designated] speed limit shall be authorized and effective when appropriate signs giving notice thereof are erected at that particular part of the highway[.]" No evidence, other than evidence of a posted speed limit, is required to establish the validity of a speed limit. *See Dahl v. Turner*, 1969-NMCA-075, ¶ 35, 80 N.M. 564, 458 P.2d 816 (explaining that, once alteration is authorized, the altered speed becomes the speed limit and notice of the alteration must be given by posting). Nothing in Section 66-7-301 requires the State to provide any evidence addressing how a posted speed limit was established or adopted. The statutory scheme strongly indicates that the Legislature did not intend that evidence of the underlying engineering survey and traffic investigation be a required element in nearly every case involving a speed limit violation below seventy-five miles per hour. Nothing in the statute directly imposes Defendant's additional element for a posted speed limit violation.

**{8}** To interpret Section 66-7-301 as Defendant suggests would produce an unworkable situation and an absurd result. *See State v. Javier M.*, 2001-NMSC-030, ¶ 46, 131 N.M. 1, 33 P.3d 1 (recognizing an unworkable situation and absurd result in the interpretation of NMSA 1978, Section 32A-2-14(C) (2009)); *State v. Billington*, 2009-NMCA-014, ¶ 8, 145 N.M. 526, 201 P.3d 857 ("We must . . . avoid adopting a strict construction of the statutory language if it would convey an absurd or unreasonable result."); *State v. Galaz*, 2003-NMCA-076, ¶ 11, 133 N.M. 794, 70 P.3d 784 (interpreting NMSA 1978, Section 30-1-12(B) (1963) narrowly to avoid an absurd result). As Defendant conceded in the district court, such an interpretation of Section 66-7-301 would require the State to present a witness and an admissible copy of the engineering survey and traffic investigation for the applicable section of roadway at nearly every trial involving a speeding infraction below seventy-five miles per hour. We conclude that such an interpretation of the statute would burden the State with needless, inefficient, and unreasonable acts that were not contemplated by the Legislature. *See State v. Young*, 2004-NMSC-015, ¶¶ 26-27, 135 N.M. 458, 90 P.3d 477 (refusing to

recognize an interpretation that would frustrate the legislative purpose to maintain public order and avoid an absurd interpretation of NMSA 1978, Section 33-3-28(A) (1985)); *State v. McClaugherty*, 2007-NMCA-041, ¶ 38, 141 N.M. 468, 157 P.3d 33 (interpreting NMSA 1978, Section 39-1-1 (1917) to avoid inefficiency and dual jurisdiction that would frustrate appeals), *aff'd*, 2008-NMSC-044, 144 N.M. 483, 188 P.3d 1234. As a result, we interpret the Legislature's intent underlying Section 66-7-301 to establish a prima facie case for a speeding violation where the State presents evidence that the speed limit was posted on a visible sign along the roadway, giving drivers proper notice of the designated speed limit, and a driver exceeds the posted speed limit.

**{9}**     Defendant relies on two speed trap cases from California to support his argument that the State was required to produce an engineering survey and traffic investigation to prove that the speed limit had been altered from seventy-five miles per hour to forty-five miles per hour. *See People v. Earnest*, 40 Cal. Rptr. 2d 304 (App. Dep't Super. Ct. 1995); *People v. Halopoff*, 131 Cal. Rptr. 531 (App. Dep't Super. Ct. 1976). Defendant's reliance on these speed trap cases is misplaced.

**{10}**    The California Vehicle Code defines a speed trap, in part, as a prima facie speed limit that is not justified by an engineering and traffic survey. *See* Cal. Veh. Code §§ 40801 to 40805 (1959, amended through 2010) (speed traps). Thus, the plain language of the California Vehicle Code makes an engineering and traffic survey, or lack thereof, an essential element of a conviction based on a speed trap violation. *Compare* Cal. Veh. Code §§ 40801 to 40805 (speed traps), *with* § 66-7-301 *and* § 66-7-303 (speed regulations and establishment of speed zones); *see also* Cal. Veh. Code §§ 22351 to 22352 (1959, as amended through 2013) (speed limit violations and prima facie speed limits). No such requirement exists to establish a speeding violation in California that is not part of a speed trap scenario. *See* Cal. Veh. Code §§ 22351 to 22352. Neither Section 66-7-301 nor Section 66-7-303 involve a speed trap scenario that would require the State to produce the engineering survey and traffic investigation from the New Mexico Highway and Transportation Department in order to prove the legality of a posted speed limit. Accordingly, the district court did not err in convicting Defendant upon the prima facie evidence that he was driving at a speed in excess of the posted speed limit.

**B.     The Officer's Testimony**

**{11}**    We now address Defendant's challenges to the sufficiency of the evidence to support his conviction. Defendant asserts that the officer's testimony was insufficient to prove the speed limit because the officer did not have personal knowledge that the speed limit was forty-five miles per hour. *See* Rule 11-602 NMRA. Additionally, Defendant claims that the officer's testimony was based on lack of personal knowledge and inadmissible hearsay. *See* Rule 11-802 NMRA.

**{12}**    Our review of a sufficiency of the evidence question involves a two-step process. *See State v. Apodaca*, 1994-NMSC-121, ¶ 6, 118 N.M. 762, 887 P.2d 756. Initially, we view the

4

evidence in the light most favorable to the verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict, and then we must "make a legal determination of whether the evidence viewed in this manner could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted). "The question is whether the [district] court's decision is supported by substantial evidence, not whether the court could have reached a different conclusion." *In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 15, 121 N.M. 562, 915 P.2d 318. "The reviewing court does not weigh the evidence or substitute its judgment for that of the fact[-]finder as long as there is sufficient evidence to support the verdict." *State v. Mora*, 1997-NMSC-060, ¶ 27, 124 N.M. 346, 950 P.2d 789, *abrogated on other grounds as recognized by Kersey v. Hatch*, 2010-NMSC-020, ¶ 17, 148 N.M. 381, 237 P.3d 683.

**{13}** The citing officer testified on behalf of the State and stated that he had been employed with the New Mexico State Police for five years, had patrolled this area in the past, regularly passed through the area, and had personal knowledge of the posted speed limit. The officer further testified that he was on duty on the evening in question, and as he was approaching an S-shaped curve, he observed Defendant's vehicle coming around the curve "at a high rate of speed." Using his radar device, the officer clocked Defendant's speed at seventy-one miles per hour. According to the officer, the posted speed limit was forty-five miles per hour. The officer described the three places in the area where signs were posted stating that the speed limit was forty-five miles per hour, and the officer described the signs and the geographic location of each of those signs. Based upon the officer's testimony, the State presented sufficient evidence that the posted speed limit was forty-five miles per hour and that Defendant was traveling well in excess of the posted limit. *See State v. Dowling*, 2011-NMSC-016, ¶ 20, 150 N.M. 110, 257 P.3d 930 (noting that an evidentiary review involves "deference to the resolution of factual conflicts and inferences derived therefrom, and a legal determination of whether the evidence viewed in this manner could support the conviction" (internal quotation marks and citation omitted)).

**{14}** Defendant argues that the officer's testimony constituted inadmissible hearsay. Our appellate courts review the district court's decision to admit evidence for an abuse of discretion. *See State v. Guerra*, 2012-NMSC-014, ¶ 36, 278 P.3d 1031. Without specifically articulating his hearsay claim, Defendant asserts that Rule 11-803 NMRA prohibits police officers from testifying as to hearsay. In support of this argument, Defendant relies on the public records exception, which precludes the reports of law enforcement personnel to be admitted as public records in criminal cases. *See* Rule 11-803(8)(a)(ii) (stating that "[t]he following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness . . . [a] record or statement of a public office if . . . it sets out . . . a matter observed while under a legal duty to report, *but not including, in a criminal case, a matter observed by law-enforcement personnel*" (emphasis added)). We are not persuaded that Rule 11-803(8)(a)(ii) applies in this case because there is no evidence that the State attempted to offer the police officer's report into evidence as a public record. To the contrary, the officer testified that he personally observed Defendant traveling at seventy-one

miles per hour in an area where there were three posted speed limit signs stating that the speed limit was forty-five miles per hour. As a result, the district court did not abuse its discretion by admitting the officer's testimony.

**{15}** Defendant also argues that the officer lacked personal knowledge because he did not know who posted the speed limit signs, and this lack of knowledge constitutes hearsay. *See* Rules 11-602 (defining personal knowledge) and 11-801(C) NMRA (defining hearsay). We disagree. To the extent that Defendant is also arguing that the hearsay rule would not allow the officer to rely on the speed limit signs that stated that the speed limit was forty-five miles per hour, Defendant failed to fully develop this argument or establish how it was preserved below. *See Garcia ex rel. Garcia v. La Farge*, 1995-NMSC-019, ¶ 27, 119 N.M. 532, 893 P.2d 428 ("To preserve an issue for appeal, it must appear that a ruling or decision by the district court was fairly invoked." (internal quotation marks and citation omitted)). Because this Court does not review unclear or undeveloped arguments, we will not address this hearsay argument further. *See State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181; *see also Elane Photography v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 40 ("To rule on an inadequately briefed issue, [an appellate court] would have to develop the arguments itself, effectively performing the parties' work for them. . . . It is of no benefit either to the parties or to future litigants for this Court to promulgate case law based on our own speculation rather than the parties' carefully considered arguments."). For the foregoing reasons, we conclude that there were no hearsay violations arising from the citing officer's testimony that was based upon his personal observations and personal knowledge of the evidence.

## CONCLUSION

**{16}** Viewing the evidence in the light most favorable to the district court's verdict, we conclude that there was sufficient evidence to support the district court's conclusion that Defendant was driving seventy-one miles per hour in a posted forty-five miles per hour speed limit zone. Because the State was not required to present an engineering survey and traffic investigation as a prima facie element in the charge of speeding, the posted speed limit of forty-five miles per hour was sufficient to establish the statutory speed limit under Section 66-7-301. Finally, the district court did not abuse its discretion by admitting the officer's testimony about the posted speed limit and the citation issued to Defendant. We affirm Defendant's conviction for speeding.

**{17}    IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

6

_____
**JONATHAN B. SUTIN, Judge**


_____
**LINDA M. VANZI, Judge**